UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| GUARANTEE TRUST LIFE INSURANCE COMPANY, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 10 C 2125 |
| v. | ) ) ) | Judge George M. Marovich |
| AMERICAN MEDICAL AND LIFE INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Guarantee Trust Life Insurance Company ("GTL") filed a complaint against defendant American Medical and Life Insurance Company ("American Life"), and American Life filed counterclaims. GTL moves to dismiss American Life's counterclaims. For the reasons set forth below, the Court denies the motion.

### I.   Background

Plaintiff GTL is a mutual insurance company in Illinois, and defendant American Life is an insurance company in New York. The two were brought together by American Life's desire to do business in states where GTL, but not American Life, was licensed to sell policies.

In its complaint, GTL alleges that in 2008, GTL and American Life entered an agreement (the "American-as-Reinsurer Agreement") under which American Life sold policies using GTL's policy forms. American Life agreed to reinsure 40% of the liability under the policies it

sold on GTL's forms, and GTL ceded premiums to American Life. GTL says it performed its obligations under the American-as-Reinsurer Agreement.

Things went awry due to an offset provision in the American-as-Reinsurer Agreement. The offset provision allowed each side to offset any amounts it owed the other based on amounts the other owed to it–even amounts owed under other agreements. GTL alleges that American Life refused to pay its share of claims and that American Life's justification was that GTL owed it money under a separate agreement. GTL alleges that "[t]here is no valid and enforceable agreement for which an offset would be available to American."

GTL filed suit. In Count I, GTL alleges that American Life breached the American-as-Reinsurer Agreement. In Count II, GTL alleges that American Life violated Section 155 of the Illinois Insurance Code by refusing to pay claims.

American Life answered the complaint, asserting nine affirmative defenses. American Life also filed six counterclaims. The Court takes as true the allegations in American Life's counterclaims.

According to American Life, at some point, the parties began discussing a reinsurance agreement (the "GTL-as-Reinsurer Agreement"), whereby GTL would reinsure part of the risk assumed by American Life under medical insurance policies. The GTL-as-Reinsurer Agreement was to begin in August 2008. American Life alleges that the parties ultimately reached a meeting of the minds. Between August 2008 and June 2009, American Life wrote policies and ceded to GTL approximately $500,000 in premiums.

By August 2009, a dispute erupted. In August 2009, GTL informed American Life that it believed it was not bound by the GTL-as-Reinsurer Agreement. GTL also informed American

Life that GTL would not reinsure American Life's policies due to GTL's allegedly-mistaken belief that American Life had illegally issued policies without certificates of authority, which are required under state law. In September 2009, GTL mailed American Life a check for approximately $600,000.00, which was meant as a refund of the premiums American Life had ceded to GTL. American Life sent the check back.

In Count I of its counterclaim, American Life seeks a declaratory judgment that the GTL-as-Reinsurer Agreement is enforceable. In Count II, American Life seeks a declaration that GTL ratified the GTL-as-Reinsurer Agreement. In Count III, American Life alleges that GTL breached the GTL-as-Reinsurer Agreement. In Count IV, American Life seeks a declaration that it is entitled to an offset against the sums it owes under the American-as-Reinsurer Agreement. In Count V, American Life seeks restitution. In Count VI, American Life seeks a declaration that if the GTL-as-Reinsurer Agreement is unenforceable then so is the American-as-Reinsurer Agreement.

## II.     Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed

factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). To survive a motion to dismiss, a claim must be plausible. *Iqbal*, 129 S.Ct. at 1950. Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, a plaintiff must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a court "*may* strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f) (emphasis added).

## III. Discussion

### A. Counts I and II

GTL moves to strike Counts I and II on the grounds that they are redundant. As GTL points out, American Life's seventh affirmative defense states, "The GTL-as-Reinsurer Agreement is binding and enforceable because GTL began performance under and ratified the agreement." In Count I, American Life seeks a declaration that the GTL-as-Reinsurer Agreement is enforceable because GTL acted upon the agreement by accepting premiums from American Life. In Count II, American Life seeks a declaration that the GTL-as-Reinsurer Agreement is enforceable because GTL ratified it. The Court agrees that the affirmative defense

is essentially the same as Counts I and II, but the Court will not strike them. The use of the word "may" in Rule 12(f) means the Court is allowed to strike redundant material, but it is not required to. Fed.R.Civ.P. 12(f). What the Court is required to do is to treat counterclaims mistakenly designated as affirmative defenses and affirmative defenses mistakenly designated as counterclaims as though they were correctly identified in the pleadings. Fed.R.Civ.P. 8(c)(2). That American Life designated the same theory as both an affirmative defense and a counterclaim merely reflects caution, and the Court is not required to punish American Life for that. Accordingly, the Court will not strike Counts I and II.

### B. Count III

In Count III, American Life alleges that GTL breached the GTL-as-Reinsurer Agreement. GTL moves to dismiss the claim on the grounds that American Life has failed to allege that American Life performed the contract. Under Illinois law, to state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages." *FedNav Int'l LTD v. Continental Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010).

The Court rejects GTL's argument that American Life failed to allege that it performed under the contract. To the contrary, in paragraph 10, American Life alleged that it "wrote limited medical insurance policies that were covered by the GTL-as-Reinsurer Agreement and ceded to GTL a portion of the premium it received." Accordingly, the Court concludes that American Life has sufficiently alleged performance so as to state a plausible claim for breach of contract. The Court will not dismiss Count III.

### C. Counts IV and VI

In Count IV, American Life asserts that the American-as-Reinsurer Agreement contains an offset provision which allows American Life to offset amounts it owes GTL by amounts GTL owes it under the GTL-as-Reinsurer Agreement. Specifically, American Life alleges that the American-as-Reinsurer Agreement states, in relevant part:

> Each party hereto has the right, which may be exercised at any time, to offset any amounts, whether on account of premiums or losses or otherwise, due from such party to another party under this Agreement whether on account of premiums or losses or otherwise due from the latter party to the former party. The party asserting the right of offset may exercise this right, whether as assuming or ceding insurer or in both roles in the relevant agreement but shall only have the right of offset against funds within the context of this Agreements [*sic*] and shall have the right of offset between any other agreement between the parties hereto after notice of ten (10) days has been provided.

(Counterclaim ¶ 38). American Life seeks a declaration that this offset provision means that American Life can offset amounts it owes to GTL by amounts GTL owes it under the GTL-as-Reinsurer Agreement.

GTL argues that Count IV fails to state a claim, because another provision in the American-as-Reinsurer Agreement (which American Life attached to its counterclaim) "prohibits the relief requested." GTL is, in essence, arguing that American Life has pleaded itself out of court by attaching a document that shows it is not entitled to judgment. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). The provision of the American-as-Reinsurer Agreement that GTL relies on (in asserting that American Life has plead itself out of court) states:

> This Agreement shall constitute the entire agreement between the parties *with respect to the business reinsured hereunder*. There are no understandings between the parties other than as expressed in this Agreement and any change or modification of this Agreement shall be null and void unless made by amendment to the Agreement and signed by both parties.

(The "merger clause." Emphasis added). Part one of GTL's argument seems to be: the American-as-Reinsurer Agreement does not allow amendments other than those signed by both parties and the GTL-as-Reinsurer Agreement is not signed by both parties; thus, the GTL-as-Reinsurer Agreement cannot amend the American-as-Reinsurer Agreement. Part two of GTL's argument seems to be: since the GTL-as-Reinsurer Agreement cannot amend the American-as-Reinsurer agreement, the GTL-as-Reinsurer Agreement cannot be used to offset the American-as-Reinsurer Agreement.

GTL's argument does not convince the Court that American Life has plead itself out of court with respect to Count IV. First, the offset provision American Life seeks to enforce in Count IV is a provision in the American-as-Reinsurer Agreement, not a provision of the GTL-as-Reinsurer Agreement. Enforcement of one provision in a contract is not barred by a merger provision in the same contract. Second, the merger provision says that it is the only agreement "between the parties *with respect to the business reinsured hereunder*" and that amendments to the agreement must be signed. (Emphasis added). Nowhere does it say that *all* agreements between the parties must be signed, and nowhere does it say that it is the *only* agreement between the parties. So, nothing in the merger provision says that the GTL-as-Reinsurer Agreement had to be signed in order to qualify as "any other agreement between the parties" for purposes of the offset provision. Accordingly, American Life did not plead itself out of court by attaching to its counterclaim a copy of the American-as-Reinsurer Agreement (which included that Agreement's merger provision). The Court will not dismiss Count IV.

GTL alleges that the same merger provision means American Life has plead itself out of court with respect to Count VI. In Count VI, American Life alleges that if the GTL-as-Reinsurer

Agreement is unenforceable, then the American-as-Reinsurer Agreement is also unenforceable. Although American Life's claim is not entirely clear, it seems to be alleging that the parties amended the agreements with an acknowledgment that the agreements were dependent upon each other and that each could be canceled within 30 days if the other were canceled. GTL argues that American Life has plead itself out of Court because of the merger provision, which, according to GTL, prevents this amendment. American Life may have difficulty surviving a motion for summary judgment on this claim, but American Life has alleged sufficient facts to put GTL on notice of a plausible claim. Accordingly, the Court will not dismiss Count VI.

### D. Count V

In Count V, which it labels "RESTITUTION," American Life sets out an alternative claim. It alleges that it ceded $600,000.00 of premiums to GTL in order to obtain reinsurance of part of the risk GTL assumed on limited medical insurance policies covered by the GTL-as-Reinsurer Agreement. American Life alleges that if the GTL-as-Reinsurer Agreement is void or unenforceable, then it "would be unjust" for GTL to retain the premiums, which would constitute a windfall.

GTL would like Count V dismissed on the grounds that restitution is a remedy rather than a cause of action. Reasonable people may come to different conclusions on that issue (*compare In re: Mexico Money Transfer Lit'n*, 164 F. Supp.2d 1002, 1017 (N.D. Ill. 2000); *with Hanley v. Trendway Corp.*, Case No. 94 C 5406, 1995 WL 103748 (N.D. Ill. Mar. 6, 1995)), but this Court need not wade into the debate. "[F]or 12(b)(6) purposes it does not matter whether [counter-plaintiff] places any label–or even the wrong label–on the claim." *International Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp.2d 982, 991 (N.D. Ill. 2006) (citing

*NAACP v. American Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992)). What matters is whether American Life's allegations add up to a plausible cause of action under Illinois law, and they do. The Illinois Supreme Court has said:

> The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies, including the equitable remedy of constructive trust and the legal actions of *assumpsit* and restitution or quasi-contract. To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

*HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 678-679 (Ill. S.Ct. 1989) (internal citations omitted). Whatever the label, American Life has stated a cause of action based on that theory. The Court will not dismiss Count V.

## IV. Conclusion

For the reasons set forth above, the Court denies plaintiff's motion to dismiss.

ENTER:

/s/ George M. Marovich
George M. Marovich
United States District Judge

DATED: February 3, 2010